May it please the Court, my name is Kevin McCoy. I'm with the Federal Defender's Office in Anchorage, and I represent Jo Beaudion in this matter. I would like to focus my comments on the two issues that were identified in the briefing, the first issue being the ambiguity inherent in the definitions that apply to the word use and the definition that applies to the word brandish in the statute. If I have time, I'd like to discuss the impact of the Blakely opinion on the Harris opinion and perhaps discuss whether the Sixth Amendment requires the brandishing issue to be resolved by the jury. One thing you might want to address in connection with your discussion of Harris and your view of Blakely's impact on it is the Supreme Court's jurisprudence, like in Agostini, that says that we as a Ninth Circuit lower court can't prospectively overrule a Supreme Court case on the theory it's been undermined. Understood and anticipated that question. The facts in this particular robbery here are just not in dispute. Mr. Beaudion went into a bank wearing a ski mask, obviously armed with a shotgun that everyone in the bank could see for the purpose of robbing the bank. His conduct appeared to meet the definition of brandishing that is set forth in 924C4 because the weapon was just apparent to everybody that was in the bank. And for that reason, Judge Sedgwick composed a seven-year sentence on count to the 924C count. Mr. Beaudion's position is that the term use, which is discussed by the Supreme Court in the Bailey opinion, and the term brandish, which is defined in C4, are essentially the same, but that they prescribe different punishments. And because they describe different punishments, he's entitled to, I guess, the benefit of the more lenient punishment and should get five years instead of the seven years. The Bailey opinion talks about the word use, and it's a term of art. And it addresses whether the weapon is actively employed during and in relation to the offense. And the question that I present and the question that's difficult at least for me to answer is, how do you actively employ a weapon without displaying it during and in relation to the bank robbery? The government, in its briefing, posits some suggestions at the end of its brief, suggesting that the robber could walk into the bank and leave his gun in the car and then have the car, the weapon available for him when he makes his getaway. I think it's important for the Court to remember that 924C has two prongs. One is a use or carriage during and in relation. The second prong is possession in furtherance of. And I would argue that on those facts, just leaving the weapon in the car, you perhaps have possession in furtherance of, but you do not have use during and in relation. During and in relation may come into play if something happens afterwards. But just on those facts, no. Would a shotgun always be visible? There are probably ways you could conceal it in a trench coat or something like that. But certainly in this case, it was plainly visible. In the Terminator, it was concealed in a few of those scenes. I have to tell you, I don't see the Terminator movies. I was thinking of the Michael Moore film, Bowling for Columbine, where you went to the bank in North Dakota for opening an account. They gave you a gun. Well, I don't want to say I have lowbrow taste, but I remember in the first Terminator movie, the guy who was trying to stop Arnold Schwarzenegger had a shotgun in his coat, and it wasn't visible. I think that's possible. And in that – but, you know, in that context, in that context, you're possessing it in furtherance of, I think. That's the way I read the statute. But when you mention that you have it, at that point, under the definition of brandishing it, you're using it. And our dilemma is I just don't – it's difficult for me to posit a situation where you use a weapon and actively employ it as that term is defined in brandishing. What if you had a handgun in your pocket or a shotgun in your belt under your coat, and you have it so that if something comes up, you can shoot somebody if you need to? Correct. Now, isn't that using it during the surrounding? I disagree. No, I think that is – I mean, if the facts are it's in your coat or in your pocket and no one knows, that's possession in furtherance of. I can give you an example of a trial I did last week in Anchorage, and it's a little bit different, but I think it illustrates the distinction, at least for me. It was an attempted distribution of ecstasy pills. Money was given to deliver ecstasy – to purchase ecstasy pills. The pills that were purchased were bunk. And, of course, the customer was disgruntled and nine days later came to my client's house to – and a shootout occurred. And the question was whether that shooting was during and in relation to the crime, and it wasn't because it happened so far beyond that. Judge Holland issued a judgment of acquittal. What I'm saying is, is that if you – it's clearly – the example that you posit, it clearly is possession in furtherance of. And I think that's why – it was Congress's response to Bailey, because courts before had been given an expansive use to use the – and I guess Bailey put a stop to that. And so Congress responded because they did want to punish the conduct that you're talking about. But what transforms it from possession to use is mentioning it, displaying it, waving it around. And I think that in those – I mean, it's just – when you're in the bank with the gun, how do you use it without either saying that you have it or without – What if you used it to shoot a lock off a door in a back room and no one was present when you shot the lock off the door? I guess it wouldn't be brandished if there wasn't a third person there, but you would be using it for the robberies. Yes. How would you get back – I mean, I suppose that's true. I suppose you could have a nighttime break into the bank and use it in that fashion, yes. Or during the daytime. It could be a back room. I'd like to have you have a minute to talk about whether you can reconcile Harris and Blakely. Okay. Why don't I move on to that? And it's clear I think the government's going to argue that Harris controls, and I also understand the court's problem with Agostino. I think the reality that – the point that I want to make with regard to that is that 924C does not contain an express maximum. I think by case law there's certainly some courts that recognize it to be life, and the progressive penalties are stated as minimums. But when you combine that with Guideline 2K2.4, where the Guideline now recommends, but before required that the Guideline sentence be the minimum sentence, what you have here is practical maximum penalties. That's what you have. Practical – what did you – practical? Practical maximums. That's what I meant to say. And I think the Court would be hard-pressed, and certainly the experience in the District of Alaska would be hard-pressed to find cases where the sentences went beyond the mandatory minimums. And so they are practical maximums. I have to concede, and I did in my brief, I think you were bound by Harris, but I think it's an issue that should be resolved. I mean, what Blakely was fascinated – you know, when Apprendi came out, maximums were the statutory maximum. Then Blakely came out and said, well, it's the maximum, you know, without additional judicial fact-finding. And here, if you – especially if you apply 2K2.4, you don't go beyond the minimum unless you do an upward departure. And so that's why I use the term practical maximum. So – I think it's a good argument. It's sort of the Supreme Court show they're taking this a step at a time. It has to be raised here to preserve it for further review. I'll save the balance of my time for rebuttal. Thank you very much. Did you have anything further, Justice Fletcher? Because we've given more time. Thank you so much. Good morning. May it please the Court. My name is Joanne Farrington, and I represent the United States in this case. As has been mentioned by my opposing counsel, this case presents two issues. The first is whether or not the juxtaposition of the 7-year mandatory minimum sentence for brandishing a shotgun in the course of a bank robbery with the 5-year mandatory minimum sentence for use or possession of that shotgun is so ambiguous that the rule of lenity comes into play and the Court should have imposed a lesser 5-year sentence. I suggest that the entire argument is based on a theory that the two definitions overlap completely and that you cannot use a weapon in the course of a bank robbery without also brandishing it. I believe, unless the Court has some additional questions, that the example that Judge Gould offered and the examples in our brief demonstrate that that simply isn't the case. There are ways that a weapon can be used and possessed in the course of a bank robbery that don't involve brandishing it. Now, what exactly did the defendant do in this case? The defendant walked into a bank wearing a ski mask, holding a sawed-off loaded shotgun, walked up to the teller's station, placed the gun on the counter in front of the teller and demanded all of her money, and moved from teller to teller, collecting money, freed the shotgun, and walked out. What about that is brandishing? He wasn't waving it around and he wasn't pointing it at anybody? Well, there was a factual dispute as to whether the shotgun was actually pointed at the first teller when he walked up to her and put it on the counter. He denied that he pointed it at her, but he certainly was carrying it. In any event, what you would look to, Your Honor, is the statutory definition of brandishing. While some might argue that you have to wave it around and, you know, actually perhaps act like you're going to shoot someone in order to brandish, the statutory definition in 924C4 is to display all or part of the firearm or otherwise make the presence of the firearm known to another person in order to intimidate that person. Yes. I take it that under the statutory definition, the elements of brandishing are essentially that you display the weapon to someone with the intent to create some fear on their part. That's exactly right. And it doesn't require pointing it at them. You could display it in your pocket underneath your coat or something. I don't ñ I'm not ñ I think literally at least nothing more is required. Now, then what would use be? Well, brandishing, as does discharging a firearm, which is the third prong of the 924C, does involve use, obviously. But you can also use a firearm, for instance, in the getaway car. It can be there at the handy in case you're pursued. He could be carrying his weapon in his pocket, not intending to show it or use it or brandish it in the course of a bank robbery, but it's there handy if he discovers he needs it. That would be possession and furtherance of the crime. That would be possession. So I'm not sure whether there's any room for use between possession with a firearm and brandishing. Where's use in between those two? The statute offers two different formulations, possession and use. Neither of them are involved in this case except to the extent that the defendant is contending that they overlap completely with brandishing. And our suggestion is that they don't. If, as Judge Gould suggested, he had used a weapon to shoot off a padlock in a back room, that would clearly have been both use and possession without brandishing. In most cases, we would concede that if one uses a firearm in the course of a bank robbery, one is going to likely brandish it. And one is likely going to be subject to the 7-year mandatory minimum. We believe that was exactly Congress's intent in the context of that particular crime. Moving on to the Harris argument, I'd like first to suggest that this entire argument is a bit of a red herring in the context of this case, because in this case, Mr. Bodian was first charged in his indictment with brandishing his weapon. He admitted at the exchange of plea to all of the facts that constitute brandishing. He admitted that he walked into a bank holding a sawed-off shotgun in plain view and laid it on the counter in front of the teller as he was demanding that she turn over her cash. Then at the imposition of sentence, in effect, as he did here today, defendant's testimony indicated that that conduct, which Mr. Bodian had factually admitted to, amounted legally to the definition of brandishing. Under those circumstances, I don't believe there is a Blakely-Booker-Harris issue left. To the extent there is, Harris clearly controls and is on all fours with this case. A somewhat similar situation was created, maybe a useful analogy. After Apprendi was decided, there was much speculation that Almendez-Torres was dead-letter law as well. And this Court was asked to declare that it was effectively overruled, and Judge Gould and Pacheco-Zapita pointed out that it is not this Court's prerogative to declare in advance that the Supreme Court has overruled itself. That is a prerogative that the Supreme Court has reserved to itself. Well, I don't take a lot of credit for that principle. I think it's in a lot of our cases. It is, Your Honor. And the Supreme Court's been very explicit with us in that Agostini case, as the appellants recognized, so, and other cases. Now, turning to Booker-Fan-Fan, we probably still have to remand because the district court judge was under the thought that the guidelines were mandatory, as we all did at that time. I don't believe that that's the case, Your Honor. Booker does create that new issue that was, it was not raised below, it was not raised in the opening brief, and, in fact, it was not argued by counsel here today. But our Ameline case, if it holds up, our Ameline decision, I think, says that we can look at things like that as plain error under Booker. Well, of course, let's divide up what we're talking about here. The plain error in Booker would only apply to count one sentence, which the 33 months that were imposed under count one, the minimum mandatory sentence is dictated by Paris and is that one. I would suggest that in the interest of finality, where there is no Sixth Amendment violation, and where the defendant, indeed today, before us here today, did not argue that the 33-month portion of his sentence should be reconsidered, that there are no grounds to remand. Finally, of course, I would argue that there was, that this was not plain error. Under Ameline, which I understand guides this Court today, that was a Sixth Amendment violation case, which we don't have here. There were no upward adjustments of his sentence for the bank robbery portion. And there, the sentence imposed on him was reasonable and it was within the guidelines and it was imposed under circumstances that I don't think this Court could describe as tending to raise serious questions about the fairness or the integrity of the procedure. In fact, the defendant never has, then or now, objected to those procedures. Well, you know, when it hasn't been raised by either party, it raises some concerns. It may be cases where a defendant does not want to risk being resentenced to a higher sentence, so we shouldn't just perhaps be willy-nilly sending them all back. We should require people to give them to him. That's true, Your Honor. And also in the interest of judicial economy, the we have going to have quite a bit to deal with, with the Booker remands in context of Sixth Amendment violations. The notion of sending back cases that have not been objected to where there is no Sixth Amendment violation is a significant burden on the district courts. I think there's going to be a big burden no matter how we play it out. It's a very tough issue. And, you know, as you know, we're in the middle of it now. The government's filed papers seeking rehearing of Ameline. That was going to be the last point that I mentioned. I know you're aware of that and the motion asking us not to do anything in any other case. But all that will get sorted out. You guys are coming in on this case just while that's swirling around. Are you saying that the Blakeley problem doesn't apply because he admitted all the facts? That's correct, Your Honor. With respect to brandishing and with respect to bank robbery as well, he was charged with, explicitly charged with brandishing the weapon. At his change of plea, he admitted the facts that amount to brandishing, although he declined to concede that those facts amounted to brandishing legally. But in fact, at the imposition of sentence, his counsel did concede that. So there's no Sixth Amendment problem. There is no Sixth Amendment problem. However, how do you still – how do you resolve the problem that – or the issue that the Supreme Court said that as their cure of the Sixth Amendment problems, they're making the guidelines discretionary? So how do we know the judge wouldn't have given him a lower discretionary sentence if the guidelines weren't mandatory? With respect to the brandishing of the weapon, that is not an issue because the sentence that was imposed was not discretionary. It was a mandatory minimum. Mandatory minimum, okay. I do understand your point with respect to the portion of the sentence that was imposed on count one, the bank robbery count. That was indeed a guideline sentence, one that did not involve any upward departures or upward adjustments, but it was imposed under the guidelines, with the judge believing that the guidelines dictated the results. Thank you. My time is up. I just want to respond with two quick points with regard to Booker and Fanfan. I invite you to read Judge Sedgwick's sentencing comments because at sentencing the government asked for a larger sentence than Mr. Bodian ultimately got. The judge was concerned with the exercise of charging discretion because often robberies in Alaska involving weapons are not – the 924C is not charged, and that was a problem that Judge Sedgwick had. And the government was asking for a larger sentence, and Judge Sedgwick commented on it. So I think Judge Sedgwick might want to take a look at this again if he had a chance. And then the last comment I want to make relates to your example, Judge Gould, about shooting the lock-off. I just – I don't see that as a practical example in terms of robberies is how they happen. The gun's out before it gets into the back room to shoot the lock-off. It would be a strange set of circumstances where that wasn't the case. Those are the thoughts I'd offer to you, and thank you for your courtesy. We appreciate your – did you need more – you didn't need more time. I did not, sir. Thank you. Okay. Thank you. Well, we appreciate the excellent arguments of counsel and appreciate your coming all the way from Anchorage to visit with us. Thank you.      Thank you. Thank you. Thank you. Thank you.
judges: B. Fletcher, Gould, King